UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

GENERAL ELECTRIC CAPITAL CORP.,

       Plaintiff,                        Case No. 2:05-cv-1130
                                              JUDGE GREGORY L. FROST
       v.                                   Magistrate Judge Mark R. Abel

JEFFREY L. LANMANN, et al.,

       Defendants.

**OPINION AND ORDER**

       This matter is before the Court for consideration of a Motion to Strike and Dismiss Affirmative Defenses (Doc. # 8) and a corresponding memorandum in support of Plaintiff's motion (Doc. # 9) filed by Plaintiff, General Electric Capital Corporation ("GECC"), a memorandum in opposition (Doc. # 20) filed by Defendants, Jeffrey L. Lanmann ("Lanmann") and Jeffery A. Beaver ("Beaver"), and a reply memorandum (Doc. # 21) filed by GECC.  For the reasons that follow, the Court finds the motion to strike and dismiss not well taken.

**I.  Background**

       Given the type of motion addressed in this Opinion and Order, the Court need not and does not set forth the facts in much detail here.  Of import for present purposes is that this case is an action brought by GECC against Lanmann and Beaver.  GECC is a Delaware corporation with its principle place of business in the state of Connecticut, while Defendants are both citizens of the state of Ohio.  Defendants served as Guarantors of a Master Lease Agreement ("Agreement") that non-party Torymac Investments, Inc. ("Torymac") had with GECC.  At the

1

time of the Agreement, Lanmann was Vice President for Torymac and Beaver was a principal of Torymac.

Defendants signed the Agreement on April 17, 2000, and each executed Guarantees on the same date in writing promising full and prompt payment for all present and future obligations of Torymac to GECC, and all costs and expenses associated with enforcing the Guarantees in consideration for GECC delivering and leasing equipment to Torymac.  Both parties signed a Modification Agreement ("Modification") on October 15, 2002 that clarified the terms of the original Agreement.  In reliance on Defendants' Guarantees, GECC extended credit to Torymac and delivered agreed-upon equipment.  Torymac later declared bankruptcy and returned the equipment to GECC, which then sold it for $454,448.80, in mitigation of the alleged total damages of $727,376.22.

GECC asserts that Defendants breached their Guarantees in failing to pay the requested sum of $319,097.29.  Accordingly, the company filed the instant suit on December 16, 2005 to obtain payment and damages resulting from Defendants' alleged breach of contract.  GECC also claims "interest of 18% per annum on the principal amount of $ 727,376.22" and all attorneys' fees and costs.  (Doc. # 1, ¶ 24.)

Defendants filed an Answer on February 17, 2006 that asserted seven affirmative defenses:  payment, novation, accord and satisfaction, waiver, release, estoppel, and bankruptcy/discharge.  (Doc. # 4, at ¶ ¶ 15-21.)  On March 29, 2006, GECC filed a motion to strike and dismiss all seven affirmative defenses.  (Doc. # 8.)  The parties have completed briefing, and GECC's motion is ripe for disposition.

## II. Analysis

### A. Standard Involved

GECC attacks Defendants' affirmative defenses under Federal Rule of Civil Procedure 12(f), which states:

> Upon motion made by a party before responding to a pleading, or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed. R. Civ. P. 12(f).

Motions to strike defenses are generally disfavored. A motion to strike an affirmative defense under Rule 12(f) "is proper if the defense is insufficient; that is, if 'as a matter of law, the defense cannot succeed under any circumstances.'" *United States Sec. & Exch. Comm'n. v. Thorn*, No. 2:01-CV-290, 2002WL 31412440, at *2 (S.D. Ohio Sept. 30, 2002) (quoting *Ameriwood Industries Int'l Corp. v. Arthur Andersen & Co.*, 961 F. Supp. 1078, 1083 (W.D. Mich. 1997)). *See also United States v. Pretty Products, Inc.*, 780 F. Supp. 1488, 1498 (S.D. Ohio 1991) (stating that motions to strike may be appropriate where they "serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues which would not affect the outcome of the case") (quoting *United States v. Marisol, Inc.*, 725 F. Supp. 833, 836 (M.D. Pa. 1989) (internal quotation marks omitted)). Such a motion is also proper "if it aids in eliminating spurious issues before trial, thereby streamlining the litigation." *Thorn*, 2002WL 31412440, at *2.

However,

> [t]he Sixth Circuit has held that "because of the practical difficulty of deciding cases without a factual record it is well established that the action of striking a pleading

3

      should be sparingly used by the courts." Thus, such a motion should only be granted "when the pleading to be stricken has no possible relation to the controversy."

*Id.* (quoting *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)). Generally, a 12(f) "motion to strike will not be granted if the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined on a hearing on the merits." *Pretty Products*, 780 F. Supp. at 1498. Additionally, "this Court may only strike those defenses 'so legally insufficient that it is beyond cavil that defendants could not prevail on them.'" *Id.* (citing *United States v. Kramer*, 757 F. Supp. 397, 410 (D. N.J. 1991)). The decision whether to strike an affirmative defense is wholly discretionary. *Conocophillips Co. v. Shaffer*, No. 3:05 CV 7131, 2005 WL 2280393, at *2 (N.D. Ohio Sept. 19, 2005) ("Rule 12(f) permits the Court to act with discretion in that it *may* strike irrelevant and superfluous defenses or let them stand. There is absolutely no harm in letting them remain in the pleadings if, as the Plaintiff contends, they are inapplicable.")

      GECC also challenges Defendants' affirmative defenses under Federal Rule of Civil Procedure 8. The parties reference Rule 8(b), which provides that "[a] party shall state in short and plain terms the party's defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies." Fed. R. Civ. P. 8(b). Some courts have indeed accepted Rule 8(c) as implicitly mirroring or incorporating Rule 8(b)'s requirement of only a "short and plain statement" of the defense. *See e.g., Security People. Inc. v. Classic Woodworking, LLC*, No. C-04-3133 MMC, 2005 WL 645592, at *2-3 (N.D. Cal. Mar. 4, 2005); *Blackwell v. American Airlines, Inc.*, No. 98 C 6856, 2003 WL 732574, at *3-4 (N.D. Ill. Mar. 3, 2003). Other courts disagree, finding that a defendant's pleading of an affirmative defense must simply provide "fair notice" and does not require any particularity. *See New Hampshire Ins. Co. v.*

*Mariemax of Ohio, Inc.*, 408 F. Supp. 2d 526, 529 (N.D. Ohio 2006).  In this Circuit, it is settled that "Rule 8(b) does not apply when a defendant asserts an affirmative defense."  *Pollock v. Marshall*, 845 F.2d 656, 657 n.1 (6th Cir. 1988).

The substantive inquiry in proceeding under Rule 8(b) or Rule 8(c) is ultimately similar in this context, however.  Rule 8(b) requires that its requisite "short and plain" statements by defendants give plaintiffs *notice* of defenses they plan to use.  *Cf. Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)) (finding that for analogous Fed. R. Civ. P. 8(a), the short and plain "statement must simply 'give fair notice of what the plaintiff's claim is and the grounds upon which it rests.' ").  Rule 8(c) similarly targets fair notice, but is arguably even less demanding than its Rule 8(b) counterpart.  *See Conocophillips Co. v. Shaffer*, No. 3:05 CV 7131, 2005 WL 2280393, at *2 (N.D. Ohio Sept. 19, 2005) ("Rule 8(c) merely requires affirmative defenses to be affirmatively set forth, but does not require even a short and plain statement").  The key issue is thus whether the pleading provides fair notice of the affirmative defenses asserted.

**B.  Discussion**

As noted, GECC seeks to strike Defendants' affirmative defenses of payment, novation, accord and satisfaction, waiver, release, estoppel, and bankruptcy/discharge.  The Court shall address each of these defenses in turn.

*1. General Arguments Against Each Affirmative Defense*

GECC asserts generally that each of Defendants' affirmative defenses contravene the Rule 8 requirements of a "short and plain" statement of each defense and their applicability to

GECC's claims, thereby making them procedurally deficient. (Doc. # 21, at 6-7.) Additionally, GECC argues that Defendants' defenses are "so conclusory as to give no factual compass for purposes of charting a meaningful response" and "amount to a shopping list recalling the names of various legal theories." (Doc. # 9, at 3, 7.) GECC also contends that "the Guaranties disclaim any defenses in subsection (h) of their third paragraph." (Doc. # 9, at 9.)

In regard to whether Defendants' affirmative defense of payment is procedurally inadequate, the Court concludes that it is not. As noted, a short and plain statement of the affirmative defense is not expressly required by Rule 8(c); rather, the general rule is that "an affirmative defense may be pled in general terms and will survive a motion to strike as long as it gives the plaintiff fair notice of the nature of the defense." *Bradford Co. v. Afco Mfg.*, No. 1:05-CV-449, 2006 WL 143343, at *5 (S.D. Ohio Jan. 19, 2006) (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1274, at 616-17 (3d ed. 2004)). The Court finds that GECC has not overcome this strict standard because Defendants asserted the defense generally in the answer so as to provide GECC with fair notice of it.

GECC asserts that Defendants' affirmative defenses have been disclaimed due to the "unconditional nature of the Guaranties, to the exclusion of defenses, as set forth in subsection (h) . . . ." (Doc. # 9, at 7.) The third paragraph of the Guaranties states that the Guaranties are:

> unconditional, irrespective of and unaffected by any of the following actions or circumstances (regardless of any notice to or consent of the undersigned): [including] . . . (b) any extension, renewal, amendment, change, waiver or other modification of the [Agreement]; . . . (g) [Torymac's] voluntary or involuntary bankruptcy . . . or similar proceedings affecting [Torymac] or any of its assets; or (h) any other action or circumstances which might otherwise constitute a legal or equitable discharge or defense of a surety or guarantor.

(Doc. # 1 Ex. 5, at ¶ 3.)  Further, GECC notes that competent parties are bound by their contracts.  *See John M. Glover Agency v. RDB Bldg., LLC*, 760 A.2d 980, 983 (Conn. App. Ct. 2000) (citing *Parks v. Baldwin Piano & Organ Co.*, 262 F. Supp. 515, 520 (D. Conn. 1967), *aff'd*, 386 F.2d 828 (2d Cir. 1967)) ("The court may not relieve a party competent to contract from [even] an improvident agreement.").

In response, Defendants argue that "a waiver of affirmative defenses can only occur when that waiver is 'voluntary and knowing' " and that they did not voluntarily and knowingly waive their rights to defenses.  (Doc. # 20, at 9.)  Further, Connecticut law prohibits the waiving of defenses by parties to a contract as against public policy.  *See Tuxis-Ohr's Fuel, Inc. v. Trio Marketers, Inc.*, No. CV044002067S, 2005 WL 3047266, at *3 (Conn. Super. Ct. Oct. 26, 2005) (finding that the purported contractual waiver of the defendant's special defense was against public policy and, therefore, void based on the rationale of *Haggerty v. Williams*, 855 A.2d 264 (Conn. App. Ct. 2004)).  *Cf. Haggerty*, 855 A.2d at 268 (quoting *Hirtler v. Hirtler*, 566 P.2d 1231, 1232 (Utah 1977)) ("Of the two schools of thought . . . , we agree with the majority position that 'a stipulation contained in a written instrument, waiving the defense of the statute of limitations permanently, as to any breach of contract that might occur in the future, is void and unenforceable as contrary to public policy.' ").

Therefore, GECC can not succeed on this assertion.  In light of the goals of notice pleading and this Court's Fed. R. Civ. P. 8(f) duty  to construe all pleadings as to do substantial justice, the Court cannot say that Defendants have failed to put GECC on fair and adequate notice of the challenged claims, as Fed. R. Civ. P. 8 requires.  Additionally, GECC has not met its substantial burden under Fed. R. Civ. P. 12(f) to demonstrate that Defendants' defenses could

never succeed as a matter of law.

### 2. *Payment*

In their first affirmative defense, Defendants assert that payment of the alleged debt in question bars GECC's claims against them.  GECC moves to strike Defendants' first affirmative defense of payment on the grounds that it is procedurally inadequate.  GECC also argues that the facts of this case and the waiver language in the original agreement between the parties defeat the defense.  Defendants in turn dispute any money GECC alleges they owe and question GECC's methods of calculating the debt. (Doc. # 20, at 7.)  Defendants also properly respond that the affirmative defense of payment fulfills its purpose in providing GECC fair notice and bears a logical relationship to the complaint. (Doc. # 20, at 6.)

Similar to Defendants, the Court has not been able to decipher GECC's method of calculating money owed by Torymac.  A genuine issue of material fact certainly exists between the two parties' understanding of the money in dispute.  At this point in the case, the Court agrees with Defendants that the affirmative defense of payment bears a logical relationship to the complaint.  Defendants have paid at least some amount of money to GECC under the contractual obligations and assert that they have satisfied the debt in dispute through the sale of the machines Torymac returned to GECC and other payments made by Torymac.  The defense is therefore appropriate on its face, and the Court **DENIES** GECC's motion to strike Defendants' first affirmative defense of payment.  Whether the defense, as with all the affirmative defense asserted, will be ultimately sufficient after discovery remains undetermined.

### 3. *Novation and Accord and Satisfaction*

In their second and third affirmative defenses, Defendants contend that GECC's "claims are barred as to Defendants on account of the novation of the subject contractual relations" and on account of the doctrine of accord and satisfaction. (Doc. # 4, at ¶¶ 16-17.) They argue that the Modification served as a novation and accord and satisfaction for the obligations from the earlier Agreement. (Doc. # 20, at 8.) GECC moves to strike the defense of novation on the grounds that the Modification only allowed for an adjustment of the payments originally scheduled in the Agreement and did not alter the Agreement in any other way. (Doc. # 9, at 8.)

GECC asserts that under Connecticut law the Modification does not amount to a novation of the Agreement, because a new contract will not form a novation if it does "not purport to extinguish all of the rights and obligations of the parties under" the earlier agreement. *Id.* at 8-9 (citing *Flagg Energy Dev. Corp. v. Gen. Motors Inc.*, 709 A.2d 1075, 1083 (Conn. 1998)). As to the defense of accord and satisfaction, GECC contends that it is not relevant to this case in that GECC would have to have "accept[ed] a lesser amount than that in dispute" from Torymac in the Modification for the defense to operate. (Doc. # 9, at 9.)

Defendants in response assert that the Modification "clearly delineated and limited Torymac's and the Defendants' liability" and capped this amount at $ 388,773.50, which has been paid to GECC on the basis of Defendants' and Torymac's payments and the resale of the equipment. (Doc. # 20, at 7.) Therefore, they argue, these facts establish the Modification as both a novation and accord and satisfaction in regard to the amount owed in the Agreement.

Despite GECC's potentially relevant concerns, it has again not overcome the difficult burden it faces in trying to a strike an affirmative defense at this stage of the case. Defendants have shown that the defenses of novation and accord and satisfaction are reasonably related to

9

the issues at hand. Therefore, the Court **DENIES** GECC's motion to strike Defendants' second and third affirmative defenses of novation and accord and satisfaction.

### *4. Waiver, Release, and Estoppel*

In their fourth, fifth, and sixth affirmative defenses, Defendants assert that the doctrines of waiver, release, and estoppel prohibit GECC's claims. They contend that GECC had the opportunity to collect on the alleged debt before initiating the instant action. (Doc. # 20, at 8.)

GECC seeks to strike the defense of waiver on the grounds that language in the Agreement precludes such an defense. Paragraph 19(c) of the Agreement states:

> [GECC's] failure at any time to require strict performance by [Torymac] of any of the provisions hereof shall not waive or diminish [GECC's] right at any other time to demand strict compliance with this Agreement. . . . NO VARIATION OR MODIFICATION OF THIS AGREEMENT OR ANY WAIVER OF ANY OF ITS PROVISIONS OR CONDITIONS, SHALL BE VALID UNLESS IN WRITING AND SIGNED BY AN AUTHORIZED REPRESENTATIVE OF THE PARTIES HERETO.

(Doc. # 1 Ex. 1, at ¶ 19(c)). GECC asserts that this non-waiver language in the Agreement obviates Defendants' waiver, release, and estoppel defenses by making them irreconcilable with the facts of the case. Additionally, GECC argues that it is not clear how it relinquished any rights under the Modification, thereby precluding the relevance of the waiver defense. (Doc. # 21, at 14.)

GECC similarly contends that the estoppel defense is inapplicable because GECC believes that Defendants did not "rel[y] to their detriment or were prejudiced by the Modification[] or the non-party bankruptcy." (Doc. # 21, at 14.) GECC further asserts, however, that the defense of release is unclear in its usage by Defendants in this case. (Doc. #

10

21, at 15-16.)

Defendants contend that these three affirmative defenses are "in play" in the present case. Regarding waiver, Defendants argue that GECC waived some of the payments and Defendants' obligations in the Modification. Defendants also assert in response to GECC's arguments about the non-waiver statement in the Agreement that "an agreement not to plead an affirmative defense is considered to be unenforceable as against public policy." (Doc. # 20, at 9.)

Defendants state that they never "voluntarily and knowingly waive[d] future affirmative defenses . . . when they signed the Guaranties in 2000" and assert that enforcement of such waivers would violate public policy. (Doc. # 20, at 9.) Defendants cite "the general approach of Connecticut's courts to issues of contractual waiver ... to give effect only to waivers that are 'voluntary and knowing.' " *Kamen v. U.S. Med. Corp.*, No. CV 920333473, 1997 WL 187173, at *3 (Conn. Super. Ct. Apr. 8, 1997). GECC and Defendants disagree about the nature of the Modification and whether it constituted a waiver. The defense of waiver is certainly "in play" in this matter, and the defense will not be stricken.

Finally, Defendants allege that they have been "prejudiced by [GECC's] failure to pursue any asserted deficiency claim" in its bankruptcy action against 1st Carrier Corp., another company for whom Defendants were Guarantors under the Agreement. (Doc. # 20, at 8.) Contrary to GECC's allegations, Defendants argue what the Court finds to be a reasonable belief that the affirmative defenses of release and estoppel relate to the Agreement. Because of the changes instituted in the Modification and the disputed issues of fact between the parties, as well as the demonstrated relevance of the defenses at hand to the case, Defendants' affirmative defenses of waiver, release, and estoppel are therefore appropriate at this point in the case.

Accordingly, the Court **DENIES** GECC's motion to strike Defendants' fourth, fifth, and sixth affirmative defenses of waiver, release, and estoppel.

### 5. *Bankruptcy/Discharge*

Defendants also assert the affirmative defense of bankruptcy/discharge "on account of the bankruptcies of 1st Carrier Corp., Yurway Transporation, Inc., and Torymac Investment, Inc. and the Plan of Reorganization confirmed for those entities which resolved and discharged the subject indebtedness." (Doc. # 4, at 5.) Defendants believe they "have been prejudiced as a result of GECC's failure to pursue its asserted deficiency claim in the 1st Carrier [Chapter 11] bankruptcy case," filed by 1st Carrier in the United States Bankruptcy Court for the Southern District of Indiana (Case No. 04-18653). (Doc. # 20, at 3.) Defendants state that they "can no longer pursue an indemnity claim against 1st Carrier for the amount being sought by GECC since the 1st Carrier bankruptcy case has been fully administered and closed." (Doc. # 20, at 4, citing Ex. 1.) Additionally, Defendants assert that because GECC did not file a deficiency claim in the 1st Carrier bankruptcy case, Defendants "concluded that GECC had been satisfied in full on any claim it had" under the Agreement and Modification. (Doc. # 20, at 3.)

GECC, however, contends that Torymac, the relevant party for these Defendants, was discharged from its bankruptcy, thereby indicating the "disingenuousness" of this affirmative defense because GECC believes it would no longer be applicable under those circumstances. (Doc. # 9, at 11.) Further, GECC interprets paragraph 3(g) of the Guaranties strictly to state that Defendants' obligations outlast Torymac's bankruptcy. Additionally, GECC asserts that Defendants are not discharged of their Guaranty responsibilities as a result of their principal's bankruptcy. (Doc. # 21, at 16.)

There is some support for GECC's propositions. *See First Union Nat'l Bank v. Rath*, No. CV990431811S, 2000 WL 33124037, at *4-5 (Conn. Super. Ct. Dec. 29, 2000) (finding that in the event of bankruptcy, guarantors are not released from a bankrupt principal's debt); *Gosiger, Inc. v. Collinsworth*, No. 88-CA-79, 1989 WL 27194, at *4 (Ohio Ct. App. Mar. 23, 1989) (holding that the approval of a bankruptcy plan does not discharge the guarantors of the bankrupt of their liabilities); *see also Lightowler v. Cont'l Ins. Co.*, 769 A.2d 49, 53-54 (Conn. 2001) (finding that the relief accorded the debtor under the state bankruptcy code does not extend to other parties). But the Court concludes that Defendants' characterization of the bankruptcies is sufficient at this time for the affirmative defense of bankruptcy/discharge to survive a motion to strike.

Defendants and GECC disagree as to how the language of the Agreement and Modification affect the legal obligations of the Guarantors upon bankruptcy of a creditor party. Despite Defendants' dearth of argument regarding their bankruptcy/discharge defense, GECC has not overcome its difficult burden to strike this defense at this point in the case. Although a close call, the Court agrees with Defendants that the defense is relevant to the case and that discovery is the proper time to explore this defense further. The Court **DENIES** GECC's motion to strike Defendants' seventh affirmative defense of bankruptcy/discharge.

### III.  Conclusion

For the foregoing reasons, the Court **DENIES** GECC's motion to strike.  (Doc. # 8.)

**IT IS SO ORDERED**.

                                                 s/ Gregory L. Frost
                                                 GREGORY L. FROST
                                                 UNITED STATES DISTRICT JUDGE